# WASHINGTON AND GEORGETOWN RAILROAD COMPANY v. HICKEY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 253. Argued March 30, 1897. — Decided April 19, 1897.

A car upon a street horse railroad in Washington, arriving at a point where the street crossed a steam railroad at grade, found the gate bars lowered. A train on the steam railroad was seen to be approaching. Before it arrived at the crossing the bars were raised. The driver of the horse car attempted to cross, notwithstanding the approaching train. The gate bars were lowered again and the horse car was caught upon the track. It was filled with passengers, among whom was Mrs. H., one of the defendants in error, sitting upon an open outer seat. The frightened passengers rushed precipitately from the car. Their doing this caused Mrs. H. to be thrown from the car, whereby she was seriously injured. The railroad train was stopped just before reaching the horse car. The bars were again raised, and the horse car went off the railroad track uninjured. Mrs. H. and her husband sued both railroad companies to recover damages; alleging that she was pushed and shoved from her seat and thrown violently to the ground; claiming that the steam railroad company was liable by reason of the negligence of its servant in managing the gates, and that the horse railroad company was liable by reason of the negligence of its driver in not waiting till the train should have passed; and demanding a recovery of thirty thousand dollars as damages. The court charged the jury that if they should find from all the evidence that the plaintiffs were entitled to recover, they might award damages within the limits claimed in the declaration. The jury returned a verdict for twelve thousand dollars. The court thought this to be excessive. With the plaintiffs' consent it was reduced to six thousand dollars, and judgment entered for that amount. *Held,*

(1) That the driver of the horse car was guilty of negligence in attempting to cross the track of the steam railroad under the circumstances;

(2) That there was evidence to warrant the jury to find that the gateman was the servant of the steam railroad company, and that that company was responsible for the results of his negligence;

(3) That as no exception was taken to the charge respecting damages, no question upon it is before the court;

(4) That whether Mrs. H. was injured by falling from the car or from being pushed from it was immaterial, in view of the causes of the injury.

THE case is stated in the opinion.

*Mr. Samuel Maddox* for the Baltimore & Potomac Railroad Company.

*Mr. M. J. Colbert* and *Mr. G. E. Hamilton* for defendants in error.

*Mr. Walter D. Davidge* for the Washington & Georgetown Railroad Company. *Mr. Walter D. Davidge, Jr.*, was on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This action was brought by the defendants in error, who are husband and wife, to recover from the defendants (the one being a horse car company and the other a steam railroad company) damages for personal injuries sustained by the wife on account of the alleged negligence of the servants of the defendants. The facts of the negligence were alleged in the declaration, and each defendant filed a plea of not guilty, upon which issue was joined. A trial was had in the Supreme Court of the District of Columbia, resulting in a verdict for the plaintiffs, the judgment upon which having been affirmed by the Court of Appeals, the defendants have brought the case here for review.

On the trial evidence was given tending to show these facts: Mrs. Hickey, one of the plaintiffs, who was living with her husband in the city of Washington, left her home therein on the morning of the 12th day of August, 1889, and took a street car of the defendant horse railroad company at the corner of Pennsylvania Avenue and Seventh Street for the purpose of going south along the last-named street; the car was a summer car and crowded with people going to the river on an excursion; she sat on the outside of the third seat in the front of the car and in a very small space; the people seemed in a hurry and some of them called out frequently to the driver to "hurry up"; upon coming to the crossing of Seventh Street and Maryland Avenue, where the car tracks of the two corporations intersect each other, the steam cars were seen approach-

ing the intersection at quite a rapid rate; the street car stopped upon coming to the crossing, as the railroad gates were lowered; then and before the steam train came on they were raised, and the street car was started, and after it got on the track of the steam cars the gates were again lowered, shutting in the street car, the gates coming down, one on the car and one just behind the horses. When the street car entered upon the steam car crossing, the train on the tracks of the latter company was still moving quite rapidly towards the crossing and but a short distance away and in plain sight from the horse car; after getting partially upon the steam railroad track, the gates, as stated, came down, and then they were again raised, and the driver of the horse car whipped up his horses and the car got across. Before the horse car had crossed the tracks, the steam cars were coming pretty fast; the men who were sitting down in the horse car all got up and the women commenced screaming; the people on the horse car rushed to get off, and Mrs. Hickey was, in the course of the excitement and commotion, pushed off the car and was badly and permanently injured; when she fell, the steam cars were coming down and the horse car (the gates having been raised) was then driven across to the other side; the train was so close to the horse car that it just got off the track in time to escape being run over, while Mrs. Hickey says she was so near the steam car tracks when the train passed that she felt the air from the engine upon her head.

One of the witnesses said that the driver of the street car first noticed the train when he was about 50 feet from the steam car track. His car was moving at the rate of four and a half to five miles an hour, and the train was then between Eighth and Ninth streets, about 300 feet from Seventh Street. The driver wanted to cross the steam car tracks before the gate went down, and thought he could do so without danger; he did not see that the gates were being lowered as he approached, and did not put on the brakes or make other effort to stop the car until "he got the bell." The gates were once lowered and then raised to let the car pass, and then they were again lowered, and it was when they were

lowered the second time that they came down between the car and the horses, penning the car in on the steam track. The gates were raised again, and the driver succeeded in getting the horse car across the track before the train approached.

The counsel for the horse car company claimed that the cause of the accident was the commotion immediately preceding it, and by reason of which the plaintiff was pushed from the car and injured, and the question was, what caused the commotion? He urged that the commotion was caused by the improper and negligent lowering of the gates at the time when they penned the horse car between them and prevented its progress across the tracks of the steam car company, and that if the gates had not been thus lowered the horse car would have had plenty of time to cross, and there would have been no commotion and no accident. He, therefore, made several requests to the court to charge the jury upon that subject. The point of such requests was that if the jury should find that the commotion and confusion which led to the accident were caused by the sudden and negligent lowering of the gates upon the street car, which the driver of that car had no reason to believe would be thus lowered, and if the driver could have crossed in safety but for such lowering, then the horse car company was not responsible, and no recovery could be had against it.

A further request was made to charge that there was no evidence that the management of the horse car entered into or contributed to the negligence of the gatekeeper, and if the jury should find that the injury was caused by the negligence of the gatekeeper, the verdict must be in favor of the horse car company; also, that if the jury should find that the horse car would have passed the steam car track without injury to the plaintiff except for the lowering of the gates upon the horse car, and that the lowering was the cause of the injury and was an act of negligence on the part of the gatekeeper, then the horse car company was not responsible for the injury; also, that if the jury found the injury to have been the result of negligence of the gatekeeper in the management of the gates, and that but for such negligence the injury

would not have been sustained by the plaintiff, and that the driver of the horse car did not know and had no reason to believe that the gatekeeper would be negligent, then the plaintiffs were not entitled to recover against the horse car company.

The refusal of the court to charge as requested was excepted to and is now made a ground for the reversal of the judgment by this court. In his argument here the counsel for the horse car company said : " The gist of all of which instructions is that no matter whether it was negligence or not for the street car company to drive its car upon the steam car track, yet, if the jury found that it was the lowering of the gates (and not the negligence, if it were such, in going upon the steam track). that caused the injury, then they should find for the street car company. The gist of the instructions is that it was the lowering of the gates that caused the injury."

The vice in all this argument, as we think, consists in the attempted separation into two distinct causes (remote and proximate) of what in reality was one continuous cause. It leaves out of view the action of the driver of the street car as to whether he was or was not negligent, provided the jury should say the accident would not have happened if the gates had not been improperly lowered. That is, although the jury should find that the act of the driver was negligent, and by reason of that negligence his car was placed in such a position that the negligent lowering of the gates concurred with his action in producing the injury, the street car company must be absolved, if the jury should be able to say that but for such negligent lowering of the gates (which the driver of the horse car had no reason to foresee) the accident would not have happened. This is an attempt to separate that which upon the facts in this case ought not to be separated. The so called two negligent acts were, in fact, united in producing the result, and they made one cause of concurring negligence on the part of both companies. They were in point of time substantially simultaneous acts and parts of one whole transaction, and it would be improper to attempt a separation in the manner asked for by the counsel for the horse car company.

In this connection the court did charge the jury as follows:

"It is claimed by the counsel for the Washington and Georgetown Railroad Company that there was ample time for its cars to pass over the track of the Baltimore and Potomac Railroad Company before the train of the latter would reach the point of intersection of the two tracks, and that as the car of the former company approached the track of the latter the gates were up, and that the horses drawing the car had reached the steam car track when the gatekeeper suddenly lowered the gates, and thereby produced whatever alarm or confusion the evidence shows ensued among the passengers, including the plaintiff, on the street car.

"If you find the evidence establishes these facts, as thus claimed by the Washington and Georgetown Railroad Company, it would be entitled to your verdict in its favor."

The alleged negligence of the horse car driver consisted in endeavoring to cross at all, under the circumstances, until after the passage of the train on the steam railroad. Upon the evidence the jury would have been justified in finding that he had no right to indulge in any close calculation as to time in attempting to cross the steam car tracks before the train thereon reached the point of intersection; that it was a negligent act in making the attempt under a state of facts where the least interruption or delay in the crossing over by the horse car would probably lead to an accident. In this view of the evidence and finding, it was not material that the driver had no ground to expect the particular negligent act of lowering the gates and the consequent obstruction to his passage across the steam car tracks, or that he would have had time to cross if the delay thus occasioned had not occurred. The jury had the right to find it was negligent to cause his car to be so placed that any delay might bring on a collision. The apparent liability to accident, if any delay should occur from any cause whatever, was plain, and such fact would support a finding of negligence in attempting to cross before the steam car train had passed. In such case it would be no excuse that the particular cause of a possible or probable delay, viz., the lowering of the gates, was not anticipated. The important

fact was that there existed a possibility of delay, and, there-fore, of very great danger, and that danger ought to have been anticipated and avoided. A delay might be occasioned at that time by an almost infinite number of causes; the horses might stumble, the harness might give way, the car might jump the track; a hundred different things might hap-pen which would lead to a delay, and hence to the probability of an accident. It was not necessary that the driver should foresee the very thing itself which did cause the delay. The material thing for him to foresee was the possibility of a de-lay from any cause, and this he ought naturally to think of, and a failure to do so, and an attempt to cross the tracks, might be found by the jury to be negligence, even though he would have succeeded in getting across safely on the particu-lar occasion if it had not been for the action of the gate-keeper in wrongfully lowering the gates. The act of the driver being a negligent act, and that act being in full force and in the very process of execution at the time the accident occurred, which accident would not have happened but for such negligent act, the fact that another negligent act of a third party contributed to the happening of the accident would not absolve the horse car company. The negligent act of the horse car driver joined with and became a part of the other act in wrongfully lowering the gates, as described, and both acts constituted but one cause for the commotion which naturally resulted therefrom, and on account of both of these acts, as parts of a whole transaction, the injury occurred.

In *Insurance Company* v. *Tweed,* 7 Wall. 44, which was an action upon a policy of insurance that contained an exception against fire that might happen " by means of an invasion, insurrection, riot or civil commotion, or any military or usurped power, *explosion,* earthquake or hurricane," the in-surance company was held not liable, although the fire by which the premises insured were burned was not directly caused by the explosion. The explosion occurred in another warehouse, by reason of which a fire was started that caught in still another building, and the fire from that building was communicated to the premises which were insured, and which

were in that manner destroyed by the fire.   The court held
that, as the whole fire was continuous from the time of the
explosion, and was under full headway in about a half an
hour, the loss by fire was within the exception contained in
the policy, and the insurers were not liable.   In that case
the question of proximate and remote causes was alluded to,
and it was said, by Mr. Justice Miller, that " one of the most
valuable of all the *criteria* furnished us by the authorities by
which to distinguish the remote from the proximate cause of
damage was to ascertain whether any new cause has inter-
vened between the fact accomplished and the alleged cause.
If a new force or power has intervened, of itself sufficient to
stand as the cause of the misfortune, the other must be con-
sidered as too remote."   In one sense there was in that case
a new cause existing in the fact that the explosion caused a
fire in another building first, and that the fire was carried by
the wind from that building to the building in question and
not from the building in which the explosion occurred, and so
it was claimed that the fire in the building covered by the
policy was not directly caused by the explosion; but the court
held that the distinction was not well founded, and that
within the policy the insurers were not liable.   The fire, in
other words, occurred by means of the explosion, and no
new cause could be said to have intervened simply because
the premises insured were burned by the fire communicated
from a third. building.

The case of *Scheffer* v. *Railroad Company*, 105 U. S. 249,
is an example of the other side.   It was there held that where
the passenger was injured by reason of a railway collision,
and as a result of such injury he became disordered in, mind
and body, and some eight months after the collision committed
suicide, his personal representatives could not maintain an
action against the railway company for his death, as his own
act was the proximate cause thereof.   It was held that the rela-
tion of the negligence of the railroad company to the death of
the passenger was too remote to be regarded as a cause of
such death, or to justify a recovery against the company.   Mr.
Justice Miller, in delivering the opinion of the court, said :

"The argument is not sound which seeks to trace this immediate cause of the death through the previous stages of mental aberration, physical suffering and eight months' disease and medical treatment to the original accident on the railroad. Such a course of possible or even logical argument would lead back to that 'great first cause least understood,' in which the train of all causation ends.

"The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train.

"His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials, as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him and his death."

So in *Carter* v. *Towne*, 103 Mass. 507, and *Davidson* v. *Nichols*, 11 Allen, 514, cited by counsel, the intervention of another and sufficient cause to produce the result is apparent.

In the first case whatever of fault there was in the sale of the gunpowder by the defendant to the boy became absolutely blotted out when, with the knowledge of his aunt, who had the charge of him and the house where he was living, it was placed in the cupboard, and a week afterwards his mother gave him some of the powder and he fired it off with her knowledge. The fact that some days later he took, with her knowledge, more of the powder and fired it off and was injured by the explosion, could not in any rational degree be said to be caused by the original wrongful sale of the powder.

In the other case the druggist sold an article harmless in itself, mistaking it for another article, also harmless in itself, but another person afterwards intermixed the article sold with another article, making thereby a dangerous explosive from which injury was suffered. It was held that there could be no recovery against the druggist, because the sale was not the proximate cause of the accident.

These are plain cases of the intervention of other and

sufficient causes for the injuries sustained and where the original actions were too remote to be regarded as causes of such injuries. The other cases cited by counsel are clearly distinguishable in principle from this one. It is unnecessary after what has been said to further comment on them.

We think there was no error in the refusal of the court to charge as requested, and the exceptions to such refusal are therefore untenable.

Another objection now urged by the counsel for the defendant railroads is to the charge of the learned judge on the subject of damages. In response to the request of counsel for plaintiffs the judge charged that —

"If the jury find from all the evidence that the plaintiffs are entitled to recover in this action, then they shall award such damages *within the limits of the sum claimed in the declaration* as will fairly and reasonably compensate the plaintiff Margaret for the pain and suffering caused to her by the injury which she sustained and for the injury to her bodily health and power of locomotion, if any such they find, which she has sustained in the past and will continue to sustain in the future as a natural consequence of said injury, and for such internal injuries and impairment to her physical health as they may find to be established by the evidence."

And the judge also charged:

"Your verdict, if you find for the plaintiff, must be a matter to be fixed by you in the exercise of a sound discretion, subject, of course, to the limits placed in the declaration of thirty thousand dollars."

The objection which the counsel makes to this charge is that it amounted to a direct intimation to the jury that the finding of a verdict for the sum named in the declaration would not be excessive, and that the jury were misled by it, for they brought in a verdict for the plaintiff for $12,000, which the court actually found to be excessive, and directed that the verdict should be set aside unless plaintiffs consented to remit $6000, which they did.

But we fail to find from the record that any exception was taken to the charge of the judge upon this subject of damages.

We do not intimate that an exception would have been good, if it had been taken; it is sufficient that no exception raises the question, and we do not therefore either discuss or decide it.

It is also objected that there is a variance between the declaration and the proof, and that the trial court did not try the issues formed by the pleadings, but went beyond them and made a new case for the plaintiffs.

The declaration alleges that the female plaintiff was pushed and shoved from her seat in the car and thrown violently to the ground and was injured in that way. The court charged the jury that if they should find from the evidence that the female plaintiff either jumped off the car in a reasonable effort to avoid injury from collision, or was pushed or thrown from the car by some other passenger or passengers endeavoring in a reasonable manner to avoid injury from such collision, and was thereby injured, then the plaintiffs were entitled to recover.

Upon this subject of variance it was said by Mr. Chief Justice Alvey, in delivering the opinion of the Court of Appeals in this case, that —

"Whether she [Mrs. Hickey] fell in consequence of a push received from some other terrified passenger, or in an attempt to save herself by jumping from the car, it would make no material difference in her right to recover. It is not so much the manner of leaving the car as it was the exciting cause that operated upon her, either directly and caused her to jump to save herself, or upon others whose actions were justifiably incited by the impending danger, and, by natural, impulsive movement, forced her from the car. In either case, her fall to the ground and injury were the direct consequences of the apparent and impending danger produced by the negligent conduct of the defendants' servants and employés. There is, therefore, no such variance as should defeat the plaintiffs' right to recover, if the facts were found to exist, as we must assume they were, according to the hypothesis of the instruction given by the court. It is said by the Supreme Court of the United States that no variance ought ever to be regarded as material where the allegation and proof substantially cor-

respond, or where the variance was not of a character which could have misled the defendant at the trial. *Nash* v. *Towne*, 5 Wall. 689, 697. Here the variance that is supposed to exist was mainly produced by the proof introduced on the part of the defendants, and therefore there was no surprise to them, and it is not pretended that they were, in any manner, injured by the supposed variance. There is in reality no substantial variance between the allegations and proof."

We think this is a correct statement, and nothing more need be said upon the subject.

These are all the questions raised by the counsel for the horse railroad company which we think it necessary to mention.

We have carefully examined the various points raised by the learned counsel for the steam railroad company, and are of opinion that they show the existence of no material errors in the conduct of the trial which could or in any way did prejudice the company. There was proper and sufficient evidence submitted to the jury on the question of the employment of the gateman by the steam railroad company. Although there was no direct evidence of an actual contract of employment entered into between the company and the gateman, yet there was ample evidence from which an inference of such employment might properly have been drawn by the jury. We also think the duties of a person so employed were correctly stated to the jury. The question whether the gateman neglected to properly discharge those duties was submitted to the jury in a manner to which no exception could be taken.

Upon an examination of the whole case, we find no error prejudicial to either company, and the judgment against both must be

*Affirmed.*