# WARD v. DISTRICT OF COLUMBIA.

---

NEGLIGENCE; QUESTIONS FOR JURY; SIDEWALKS; MUNICIPAL CORPORA-
        TIONS; CONTRIBUTORY NEGLIGENCE.

1. Ordinarily the question of negligence is for the jury, and it is only where the facts are undisputed, and all reasonable minds can draw but one inference from them, that the question is one for the court. (Following *Washington Gaslight Co.* v. *Poore,* 3 App. D. C. 127, and *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26.)

2. The District of Columbia has the exclusive control of the streets of the city of Washington, and is charged with the duty of seeing that they are kept reasonably safe for the passage of persons using the traveled portions of the same.

3. The District of Columbia has the right to cut down and remove shade trees in the streets when to do so may be regarded by its officers as necessary or expedient; but in so doing it must take such precautions as will prevent unnecessary or unreasonable danger to persons using the streets for the purposes for which they are intended.

4. Persons passing along the streets have the right to assume that there are no conditions of exceptional danger requiring special watchfulness,

and it will not be presumed that they knowingly put themselves in danger. (Following *Howes* v. *District of Columbia*, 2 App. D. C. 188; *Washington Gaslight Co.* v. *Poore*, 3 App. D. C. 127; *District of Columbia* v. *Bolling*, 4 App. D. C. 397; *District of Columbia* v. *Haller*, 4 App. D. C. 405; *District of Columbia* v. *Boswell*, 6 App. D. C. 402; *District of Columbia* v. *Payne*, 13 App. D. C. 500; and *Koontz* v. *District of Columbia, ante*, 59.)

5. Where a boy riding a bicycle along a street was injured by the falling of a tree which was being cut down by order of the municipal authorities, and it appeared that, while the boy saw some men digging around a tree, there were no barriers in the street to give warning, it was *held* (following *District of Columbia* v. *Whipps*, 17 App. D. C. 415, and distinguishing *District of Columbia* v. *Ashton*, 14 App. D. C. 571, and *Swart* v. *District of Columbia*, 17. App. D. C. 407) that it was a question for the jury as to whether what he saw was sufficient to warn an ordinarily prudent person of possible danger, and to cause him, in the exercise of reasonable care, to stop and make examination before going on.

6. An act done in the presence of impending danger to life or limb, for the purpose of escaping such impending danger, may not, in contemplation of law, constitute contributory negligence, though in fact it may have contributed to the production of the injury complained of. (Following *Washington & G. R. Co.* v. *Hickey*, 5 App. D. C. 436.)

No. 1416. Submitted December 9, 1904. Decided January 10, 1905.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a verdict directed by the court in an action to recover damages for personal injuries. *Reversed.*

The COURT in the opinion stated the case as follows:

This action was begun October 11, 1902, in the name of William H. Ward, Jr., by his next friend, William H. Ward, against the District of Columbia, to recover damages for personal injuries sustained through the fall of a tree in one of the streets of the city of Washington.

Plaintiff testified that on the morning of May 8, 1902, he was, carrying mail to his employer's residence, 507 M street northwest, on his bicycle; that while riding north along Sixth

street northwest, south of H street, he ran over some glass, and was looking to see whether there was any glass sticking to the tires; that, as he approached H street he first looked north and, the way seeming clear, he then looked east and west to see if there were any vehicles coming from those directions; that just as he neared the north curb of H street, or was passing it, a colored man ran out from the tree, which was on the east side of Sixth street, and shouted, waving his hands; that, being confused and not knowing what to do or what was the matter, he turned his wheel toward the west side of the street, diagonally northwestward, and, just as he about reached the curb, the tree or some part of it fell on him; that the next he remembers he was on the ground and his bicycle was broken, and his arm doubled up; that the tree was, by measurement, 23 feet and 9 inches north of the north curb of H street and a little forward of the projection of the bay windows of the corner house,—almost on a line with the bay windows on the north side of H street; that he was on the west side of Sixth street, very near the curb, when struck; that the tree was on the east side and fell straight across, the top almost touching the curbstone where it fell; that from the time the colored man ran out and called to him until he was struck must have been about five seconds; this he illustrated by clapping his hands together several times quickly; that he was so confused, however, that he does not really know how long it was; that, when asked where he was when the colored man called to him, he was on the east side of Sixth street, very near the middle and a little north of the curb of H street; that he turned and shot across to the west side of the street; that when he picked himself up the bicycle was lying very near the top of the tree, and he was on the north side of it, the bicycle being under it; that when struck he was very near the building line of H street, but does not know exactly which side he was on.    He testified to serious injuries received.    On cross-examination he said that he was a constant bicycle rider, using it in collecting rents for his employer; that he noticed no vehicles in the street where the tree was, and saw no unusual number of men in the street; that before looking east and west on H street

he noticed several colored men seemingly digging about a tree, but it was standing straight up and he paid no more attention to it; that he had gone over the glass beween G and H streets and was looking at his tire to see if it had sustained a puncture; that he does not remember getting off his bicycle and knows that he did not stop anywhere near the corner of Sixth and H streets, if he stopped at all; that he saw no ropes around there; that he was about the building line at south side of H street when he ceased looking at his tire and glanced up and down H street; that he then glanced up Sixth street to see if the way was clear; that at the north curb of H street he saw nothing unusual; that he was a little south of H street when he first glanced at the tree; that he next saw the tree after it had been pulled down. Plaintiff was about sixteen years old.

Plaintiff's witness, Beverly Broaddus, a youth of sixteen, said that he was standing on the northwest corner of Sixth and H streets, and had been there about fifteen minutes; that when he first saw plaintiff he was in the middle of H street riding north on Sixth; that a man ran out from the east side of the street, threw up his arms and called to plaintiff, "who was then too close to the tree to go back" and who went across the street, and the tree fell. On cross-examination he said that he did not know how many men were there; about ten or fifteen; that he saw one rope and they were pulling on it right across the street; that the man holding the rope was "about a quarter of the way out from the east curb, and not quite in the middle of the street;" that two or three men were standing there holding the rope; that only one rope was used; that witness was standing 3 or 4 feet north of the tree, and men with the rope were about 5 feet north of him; that a buggy came down Sixth street and went through.

With this and other evidence relating to the nature of his injuries, the plaintiff rested.

Defendant introduced a number of witnesses whose evidence tended to show that the tree was being cut and pulled down because it was in a decayed condition; that men were pulling it with ropes after cutting around the trunk near the ground; that

several vehicles were in the street, the number not agreed upon; that one man passed in a buggy as the tree was falling, saying he could make it, etc.; that plaintiff was called to and stopped with one foot on the ground, and then started on, some of the witnesses testifying that he said he could make it through, too; some of these witnesses said that the boy struck the curb with his bicycle and was not struck by the tree in its fall. In addition to the foregoing witnesses, who were the employees of the District engaged in removing the tree under orders, Mrs. Skinner and Mrs. Thompson, who lived nearby, were called as witnesses. Both were in the same house. They said that they saw one wagon standing still and a buggy moving rapidly just before the tree fell; that they heard the men call out; that plaintiff was coming up the street looking ahead and fell near the plug. Neither saw him stop, and one said that "the calling of the men, the passing of the buggy, and the happening of the accident all occurred within several seconds."

In rebuttal the witness Broaddus was recalled and said that the men did not halloo to the man in the buggy, who went right through without saying anything; that the first call was to the plaintiff who was then half way across H street; that plaintiff's bicycle did not strike the curb but was hit by the tree.

Plaintiff said that he did not stop at the southeast corner of Sixth and H streets, as testified to by defendant's witnesses; that he did not remember stopping at any time, but that if he did so at all it was in the middle of the block between G and H streets; that he did not say that he could make it through or that it was his fault.

Upon the conclusion of the evidence the court directed the jury to return a verdict for the defendant, and from the judgment thereon the plaintiff has appealed.

*Mr. J. J. Darlington* and *Mr. W. C. Sullivan* for the appellant.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant Corporation Counsel, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Ordinarily the question of negligence is for the determination of the jury. It is only where the probative facts are undisputed, and where all reasonable minds can draw but one inference from them, that the question becomes one of law for the court. *Mosheuvel* v. *District of Columbia,* 191 U. S. 247, 252, 48 L. ed. 170, 172, 24 Sup. Ct. Rep. 57; *Washington Gaslight Co.* v. *Poore,* 3 App. D. C. 127, 137; *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26, 31.

There was some slight conflict in the evidence in this case in respect both of the negligence of the defendant and the contributory negligence of the plaintiff, and this conflict it was the province of the jury to settle, they being the exclusive judges of the credibility of the witnesses and of the weight to be given to their testimony.

Considering the question upon the plaintiff's evidence alone, which the learned trial justice seems to have done, the credibility of his witnesses must be assumed, and full effect must be given to every legitimate inference that can be deduced from their testimony. This being done it must appear that no other reasonable conclusion could be reached than that the plainly failed to make out a case sufficient in law to entitle him to a verdict and judgment thereon. Any doubt or uncertainty as to this conclusion required submission of the issue to the jury under instructions properly stating the principles of law applicable to the particular case presented by the evidence. *Baltimore & P. R. Co.* v. *Golway,* 6 App. D. C. 143, 165; *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26, 31, and cases cited therein, as well as those above.

The question of defendant's negligence in cutting down the tree in the street without using proper precautions to prevent injury to passers-by was clearly one for the determination of the jury. Its submission, however, depended upon whether the court was right in the conclusion, as matter of law, that the

plaintiff's own negligence contributed to his injury so far as to take away any right of recovery.

Had the question of plaintiff's negligence been submitted to the jury they might have found a verdict against him; but we are not convinced that all reasonable men must necessarily reach that conclusion.

Whether there has been culpable negligence in any case necessarily depends upon the special facts and circumstances surrounding the parties at the time, and shedding light upon their conduct.

The rule of application is determined by the relations of the parties at the time, and the duties which the law imposes upon, or requires of, each in respect of those relations. What would sometimes be held culpable negligence might, under other conditions, be deemed an exercise of sufficient care.

In this case the duty imposed upon each party by well-established principles of law is of special importance in determining whether either failed to exercise due care under the facts and circumstances shown by the evidence. As was correctly stated in the first and second special instructions requested by the plaintiff, the District of Columbia has the exclusive control of the streets of the city of Washington, and is charged with the duty of seeing that they are kept reasonably safe for the passage of persons using the traveled portions of the same. It has the right to cut down and remove shade trees growing in the streets when to do so may be regarded by its officers as necessary or expedient; but in so doing it must take such precautions as will prevent unnecessary or unreasonable danger to persons using the streets for the purposes for which they are intended.

Persons passing along the streets have the right to assume that there are no conditions of exceptional danger requiring special watchfulness; nor will it be presumed that they knowingly put themselves in danger. *Washington Gaslight Co.* v. *Poore,* 3 App. D. C. 127, 136; *Howes* v. *District of Columbia,* 2 App. D. C. 188, 193; *District of Columbia* v. *Bolling,* 4 App. D. C. 397, 402; *District of Columbia* v. *Haller,* 4 App. D. C. 405, 414; *District of Columbia* v. *Boswell,* 6 App. D. C. 402, 418;

*District of Columbia* v. *Payne,* 13 App. D. C. 500, 504; *Koontz* v. *District of Columbia, ante,* 59.

The plaintiff testified, it is true, that as he rode up the street on his bicycle he saw some men digging around the tree, but that it was standing upright, and he saw nothing to cause him to apprehend danger. As there were no ropes or barriers in the street to give warning, the question whether what he saw was sufficient to warn an ordinarily prudent person of probable danger, and to cause him, in the exercise of reasonable care, to stop and make an examination before going on, was one for the determination of the jury. *District of Columbia* v. *Whipps,* 17 App. D. C. 415, 420. This testimony was quite different from that presented in *Swart* v. *District of Columbia,* 17 App. D. C. 407; *District of Columbia* v. *Ashton,* 14 App. D. C. 571, and others that have been cited on behalf of the appellee.

Strong reliance is had by the appellee upon the further fact testified to by the plaintiff, that, as he neared the point where the tree fell upon him, a colored man ran out from the tree shouting and waving his hands. He proceeded, however, to say that he "was confused, and, not knowing what to do, or what was the matter, turned his wheel towards the west side of the street, diagonally northwestward, and just as he about reached the curb the tree, or some part of it, fell on him." He also said that this was but a few seconds before he was struck. One of defendant's witnesses said "that the calling of the men, the passing of the buggy, and the happening of the accident all occurred within several seconds." And the witness Broaddus said that when the man called to plaintiff "he was then too close to the tree to go back."

It was also for the jury to determine whether, under the circumstances stated, the plaintiff was guilty of contributory negligence in the action taken. "An act done * * * in the presence of impending danger to life or limb, for the purpose of escaping such impending danger, may not, in the contemplation of law, constitute contributory negligence, though it may in fact have contributed to the production of the injury complained of." *Washington & G. R. Co.* v. *Hickey,* 5 App. D. C. 436,

471, 166 U. S. 521, 531, 41 L. ed. 1101, 1104, 17 Sup. Ct. Rep.
661.   This principle as applied to the evidence under consider-
ation is embodied in the third special instruction requested by
the plaintiff.

We are of the opinion that the court erred in withdrawing the
case from the jury, and that the question of the negligence of
each party should have been submitted to them under instruc-
tions substantially as requested by the plaintiff.

The judgment will be reversed, with costs, and the cause re-
manded with directions to grant a new trial.   It is so ordered.

*Reversed.*