## MARX v. UNITED STATES.
### No. 8696.

Circuit Court of Appeals, Ninth Circuit.
April 12, 1938.

Loyd Wright, Chas. E. Millikan, and Clyde Thomas, all of Los Angeles, Cal., for appellants.

Ben Harrison, U. S. Atty., and Carl Eardley and Russell K. Lambeau, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellants were indicted for the crime of infringing and aiding and abetting the infringement of a copyrighted dramatic composition. From a judgment of conviction, they appeal.

Two brothers, Garrett and Carrol Graham, were authors of a radio script, which Garrett Graham copyrighted under the provisions of section 11 of the Copyright Act, as amended by 37 Stat. 488, 17 U.S.C.A. § 11. The composition, entitled "The Hollywood Adventures of Mr. Dibble and Mr. Dabble," was placed with an agent in an effort to secure a radio sponsor. In October, 1934, the agent mailed a copy of the script to Groucho Marx, one of the appellants. In May following Marx wrote the agent, expressing interest in the script and a belief that, with some rewriting, it could be made into good radio material. The letter inquired how much money the authors wanted and whether they would be willing to work with a collaborator.

In August, 1935, the Graham brothers had a conference at Hollywood with the appellants and one Boasberg, their "gag man." At that time the copyrighted composition was gone over and some changes made in it, these being suggested by Boasberg. There is evidence that during this conference appellants were informed that the script had been copyrighted. For several months afterwards negotiations were carried on with prospective sponsors, but nothing came of them.

A year later the appellants made arrangements with the distributors of Camel cigarettes for a broadcast, for which appellants were to supply the script. On September 1, 1936, they broadcast a lengthy program which included in somewhat altered but plainly recognizable form the copyrighted material which had been submitted by the Grahams.

Appellants testified that at the time of the broadcast they had forgotten the Graham composition. They say that Boasberg furnished the script used on the air, and supposing him to be the author they paid him for it. The defense on the merits was that if the composition was pirated, it was due to accident and not to design.

The composition of which infringement is charged was copyrighted under section 11 of the Copyright Act, the pertinent

portions of which are shown on the margin.[1] It is contended that this section is unconstitutional. The argument is that no duration is prescribed for copyrighted works of which copies are not reproduced for sale; and that section 8, cl. 8, of article 1 of the Constitution empowers Congress to secure to authors and inventors for a limited time, only, the exclusive right to their respective writings and discoveries.

The only time limit prescribed by the act is that provided in section 23, 17 U.S.C.A. § 23. This declares that "the copyright secured by this act [title] shall endure for twenty-eight years from the date of first publication." It is claimed that Congress has failed to provide the duration of copyrights secured under section 11, and has thus without constitutional authority undertaken to grant copyrights in such instances in perpetuity.

Congress manifestly intended to extend the benefits of the copyright laws to authors of unpublished works, as well as to those whose works are published.[2] It is not to be assumed that a more extended measure of protection was intended to be given the former than the latter. Legislative enactments are to be construed, if possible, in such way, as to render them constitutional. New York Central & H. R. R. Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613. The particular act has been on the statute books since 1909, and so far as we know has not heretofore been subjected to attack. Long acquiescence in the constitutionality of legislation creates a strong presumption in favor of its validity.

█ The word "publication" has no definite and fixed meaning. "The word is legally very old, and of no one certain meaning. * * * The thought, however, running through all the uses of the word, is an advising of the public, a making known of something to them for a purpose." Associated Press v. International News Service, 2 Cir., 245 F. 244, 250, 2 A.L.R. 317.

As used in section 23 of the act, the word may reasonably be thought to mean one thing as related to published works and another as related to copyrighted works of which copies are not reproduced for sale. Section 62, 17 U.S.C.A. § 62, provides that "in the interpretation and construction of this act [title] 'the date of publication' shall in the case of a work of which copies are reproduced for sale or distribution be held to be the earliest date when copies of the first authorized edition were placed on sale, sold, or publicly distributed by the proprietor of the copyright or under his authority." The term "date of publication" as applied to works of which copies are *not* reproduced for sale is not defined. Perhaps definition was thought unnecessary in such cases, as the date of deposit is in all instances determinable without difficulty.

It would appear that Congress intended that the time limit prescribed by section 23 should have application to all copyrights secured by the act. This view is strengthened by reference to section 60, 17 U.S.C.A. § 60, authorizing the destruction by the Librarian of Congress and the Register of Copyrights of articles not desired to be preserved in the permanent file. The section concludes with the proviso that "No manuscript of an *unpublished* work shall be destroyed *during its term of copyright* without specific notice to the copyright proprietor of record, permitting him to claim and remove it." Italics supplied.

In view of the declared purpose to limit all copyrights to twenty-eight years, section 23 should be construed, in the case of works of which copies are not reproduced for sale, as having reference to the date of deposit.

█ It is claimed that the script copyrighted is not a complete dramatic composition. Since section 11 requires the deposit of one *complete* copy, with claim of copyright, it is said that there has been no valid copyright; hence there could be no infringement.

Rule 20 of the Rules and Regulations of the Copyright Office, 17 U.S.C.A. following section 53, sheds substantial light on the true meaning of the requirement. It provides, in part, "The entire work in each case should be deposited. It is not sufficient to deposit a mere outline or epitome, or, in the case of

---

[1] Sec. 11: "Copyright may also be had of works of an author, of which copies are not reproduced for sale, by the deposit, with claim of copyright, of one complete copy of such work if it be a lecture or similar production or a dramatic, musical, or dramatico-musical composition. * * * But the privilege of registration of copyright secured hereunder shall not exempt the copyright proprietor from the deposit of copies, under sections 12 and 13 of this title, where the work is later reproduced in copies for sale."

[2] See rule 19 of the Rules and Regulations of the Copyright Office, 17 U.S.C.A. following section 53.

a play, a mere scenario, or a scenario with the synopsis of the dialogue." The skit in question is not a summary or outline. The composition is a complete episode in itself. While it was intended to constitute the first of a series of connected episodes to be broadcast at intervals, it was the only one which the authors had written or composed.

■ It is urged that the indictment is insufficient in that it fails to charge a "copying" of the composition. Harold Lloyd Corp. v. Witwer, 9 Cir., 65 F.2d 1, is cited as authority for the proposition that there can be no infringement unless there has been a copying in whole or in part of the copyrighted work. However, the rule of that case has no bearing on the sufficiency of an indictment.

The argument here seems to resolve itself into the contention that the indictment does not expressly negative the possibility that the composition broadcast by appellants was an original conception.

The indictment is worded in the language of the statute. Simpson v. United States, 9 Cir., 245 F. 278. It charges a willful infringement of the copyrighted drama by broadcasting the same to the general public. An intentional copying is sufficiently alleged.

■ The indictment is further attacked because it does not charge that the broadcast was made without the consent of all the owners of the copyrighted composition. The objection is without merit. The indictment alleges that Garrett Graham is the sole owner of copyright to the dramatic composition, and that the appellants broadcast the same "without the knowledge or consent of the said Garrett Graham, the owner of said copyright as aforesaid."

■ It is claimed that the evidence is insufficient to show that the infringement was willful. However, appellants were admittedly familiar with the Graham composition a year prior to their broadcast. Whether they had forgotten it, as they claim, or whether they remembered but chose to disregard the rights of the proprietors, were problems for the determination of the jury.

■ Under this heading, it is claimed that the evidence shows the broadcast to have been made with the consent of Boasberg, said to be a co-owner of the composition. Boasberg was not a co-owner, Levi v. Rutley, 6 C.P., Eng., 523, 529, and his consent was unavailing. Both of the Grahams testified that they did not give such consent, and the appellants make no claim to the contrary.

It is urged at length that appellants did not have a fair trial because of the prejudicial conduct of the judge. A careful examination of the whole record fails to disclose misconduct. At most, there is indicated an occasional and perhaps not unwarranted impatience with counsel. Appellants had the benefit of an impartial trial.

■ It is next contended that appellants were unduly limited in the cross-examination of the witness Garrett Graham. The witness had stated on direct that he was the owner of the copyrighted manuscript, and that upon learning of the broadcast he had commenced a civil action against appellants for the recovery of damages. He was asked on cross-examination whether he testified before the grand jury concerning the instant charge. The court sustained an objection.

It is claimed that error was committed, in that the question was proper for the purpose of disclosing the interest of the witness in the outcome of the trial. The interest of the witness had already been clearly manifested and amply revealed. There was no error in the ruling.

■ It is urged that there was a fatal variance between the copyrighted work charged to have been pirated and the version of it which was in fact shown to have been broadcast.

There was no substantial variance. The basic situation in the copyrighted material and in the script broadcast was the same. The development of the idea and the manner of expression were not only markedly similar, but were in many respects substantially identical. The law is well established that where the labors of an author are substantially and injuriously appropriated by another, an infringement occurs. Dymow v. Bolton, 2 Cir., 11 F.2d 690.

■ Such variance as existed did not prejudice the rights of the accused. The indictment definitely informed them of the charge and of the time and circumstances of the claimed infringement. They were in no way misled in the preparation of their defense. Nor is the variance such as to deprive accused of protection against another prosecution for the same offense. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Washington & Georgetown Ry. Co. v. Hickey, 166 U.S. 521, 17 S.Ct. 661, 41 L.Ed. 1101.

While numerous errors are claimed in the giving and refusal of instructions, we find no merit in the assignments. The jury ·were fairly and fully instructed with respect to the law of the case.

In connection with his instruction that there is no infringement where two authors produce identical works, provided the second one does not copy the first, but arrives at his composition independently, the court remarked that, in his opinion, this coincidence very rarely occurs. Counsel for appellants complain of this remark as prejudicial, and repeatedly call attention to it as illustrating the animus of the trial judge toward their clients. Whether such coincidences are rare or frequent there is no present need to conjecture. As applied to this case, the problem is academic. It is entirely clear that the broadcasted skit was not conceived independently of the copyrighted material.

The judgment is affirmed.