**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1088n.06

No. 09-2606

**FILED**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**Oct 18, 2012**

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN SWANIGAN, | ) | |
| | ) | |
|     **Petitioner-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| JERI ANN SHERRY, | ) | |
| | ) | |
|     **Respondent-Appellee.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before:  MARTIN, MOORE, and COOK, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  In 2003, a Michigan jury convicted John Swanigan of possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, and possession of a firearm during the commission of a felony.  John Swanigan sought habeas relief under 28 U.S.C. § 2254(d) on the basis of numerous grounds, all of which the district court denied.  We granted a certificate of appealability on only one claim:  whether Swanigan's constitutional rights were violated when the firearm-possession charge identified a specific type of gun but the jury was instructed to convict if it found that Swanigan possessed "a firearm," and the proof at trial demonstrated at least two guns were found during his arrest.  In light of the Supreme Court's repeated message that habeas relief is reserved for extreme malfunctions by the state courts, *see Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), we have no choice but to **AFFIRM** in this case.

## I.  BACKGROUND

Swanigan was arrested on February 11, 2003, following a search conducted at his home in Wayne County, Michigan.  *Michigan v. Swanigan*, No. 250439 (Mich. Ct. App. Mar. 1, 2005) (unpublished opinion).  The police arrived at 10:00 p.m. and began knocking on the door, but received no response.  During this time, the police "heard yelling and footsteps, and saw shadows of people running throughout the living area." *Id.* at 3.  After the police gained entry by ramming the door down, they observed in plain view in the living room a loaded nine-millimeter handgun on the arm of a chair, in addition to various drugs and drug paraphernalia. *Id.*  The officers detained Swanigan as he emerged from the basement, where the police discovered a plastic container that "contained more than 408 grams of cocaine and a forty-caliber firearm." *Id.*[1]

In addition to two drug counts, Swanigan was charged by information with possessing a firearm during the commission of a felony in violation of Michigan Compiled Laws § 750.227b.  The information has not been provided to us in full, but the parties agree that Swanigan was charged in Count 3 specifically with "hav[ing] in his/her possession a firearm, to wit: 9MM, at the time he/she committed or attempted to commit a felony, to wit, [felony possession with intent to distribute

---

[1]Swanigan and the state periodically refer to the presence of three firearms in the house. Swanigan cites only the trial testimony of Officer Butler for the proposition that the police also found a black Taurus handgun, but Officer Butler's testimony does not make clear whether the black Taurus and the nine millimeter are one and the same. *See* R. 9 (Trial Tr. II at 29-32) (Page ID # 405-08) (discussing finding a firearm on the table and on the chair, but only introducing one gun into evidence, a Taurus, referenced as the "only actual firearm aside from [the police's]" in the living room).  Because the Michigan Court of Appeals discusses only one firearm in addition to the one in the basement, we limit our consideration to the facts as found by that court.

cocaine or marijuana]." Appellant Br. at 25-26; Appellee Br. at 16. The jury was instructed, however, that Swanigan could be convicted of Count 3 if it determined "that at the time the defendant committed or attempted to commit those [felony drug] crimes he knowingly carried or possessed *a* firearm." R. 11 (Trial Tr. IV at 25-26) (Page ID #731-32) (emphasis added).

Swanigan filed a direct appeal challenging in part the sufficiency of the evidence relating to the firearm-possession charge. The Michigan Court of Appeals affirmed, holding that the evidence was sufficient to attribute Swanigan with constructive possession of either the nine-millimeter firearm in the living room or the firearm found in the basement. *Swanigan*, No. 250439 (Mich. Ct. App. Mar. 1, 2005). Swanigan filed a motion for reconsideration, adding his claim that the jury instructions constructively amended his indictment. The Michigan Court of Appeals denied reconsideration in a one-sentence order. *Michigan v. Swanigan*, No. 250439 (Mich. Ct. App. Apr. 21, 2005). Swanigan's application for discretionary review before the Michigan Supreme Court, which included the jury-instruction claim, was also denied. *Michigan v. Swanigan*, No. 128658 (Mich. Sept. 28, 2005).

Swanigan filed his initial habeas petition in the United States District Court for the Eastern District of Michigan in February 2006. The district court determined that Swanigan's jury-instruction claim was not exhausted because it was raised on direct appeal in a motion for reconsideration, and the district court then stayed Swanigan's habeas petition so he could return to state court. R. 16 (Dist. Ct. Order 1/30/07 at 7) (Page ID #1064). Swanigan's motion for post-conviction relief in the Wayne County Circuit Court was denied pursuant to Michigan Court Rules

§ 6.508(D)(2) and (3). *Michigan v. Swanigan*, No. 03-3372-01 (Mich. Wayne Cnty. Cir. Ct. Apr. 19, 2007). The state court concluded that "[e]very one of the issues raised has been addressed or easily could have been addressed by defendant on direct appeal," but did not clarify which of Swanigan's numerous claims fell into which category. *Id.* The Michigan Court of Appeals denied review "for lack of merit in the grounds presented." *Michigan v. Swanigan*, No. 278457 (Mich. Ct. App. Jul. 23, 2007). And the Michigan Supreme Court again denied discretionary review "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Michigan v. Swanigan*, No. 134517 (Mich. Dec. 28, 2007).

Swanigan then returned to federal court to reopen his habeas petition with his jury-instruction claim now properly exhausted. The district court held that Swanigan's jury-instruction claim was procedurally defaulted because the trial court denied relief on a state procedural rule—failure to raise the claim on direct appeal. R. 36 (Dist. Ct. Order 11/30/09 at 3-4) (Page ID #1557-58). We granted a certificate of appealability because we determined that reasonable jurists could debate the merits of the jury-instruction claim and the district court's conclusion that it had been procedurally defaulted. *Swanigan v. Sherry*, No. 09-2606 (6th Cir. Aug. 9, 2010) (unpublished order).

## II. STANDARD OF REVIEW

We review de novo a district court's legal conclusions in a habeas corpus proceeding. *Goff v. Bagley*, 601 F.3d 445, 455 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1045 (2011). Because Swanigan filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we are governed by its strictures. *Id.* at 455-56. Under AEDPA, a habeas

application by a person in state custody with respect to claims adjudicated on the merits may not be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### III. JURY-INSTRUCTION CLAIM

Swanigan argues that the district court erred in denying habeas because the state court did not reject his jury-instruction claim on a procedural ground and the state court's denial of relief was an unreasonable application of clearly established federal law as set forth by the Supreme Court in *Stirone v. United States*, 361 U.S. 212 (1960). Because we hold that the state court's decision was not unreasonable on the merits, we do not address Swanigan's arguments relating to procedural default. *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), *cert. denied*, 543 U.S. 880 (2004).

Clearly established federal law holds that "[t]he right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." *Stirone*, 361 U.S. at 218-19. In *Stirone*, the defendant was charged with a violation of the Hobbs Act for his actions' effects in the sand industry. At trial, however, proof was offered of potential criminal misconduct in the sand *and* the steel industry, and the jury was instructed that it could convict if it found a violation in either. "This was fatal error," because the instruction meant

that the steel industry "might have been the basis upon which the trial jury convicted [the] petitioner," and if that were the case, "he was convicted on a charge the grand jury never made against him" in violation of the Fifth Amendment. *Id.* at 219.

The analogy between this case and *Stirone* should be obvious: Swanigan was charged with possession of a 9mm firearm, but at trial, proof was offered of potential criminal possession of the 9mm *and* one other firearm. The jury was instructed that it could convict Swanigan if it found that he possessed "a firearm," R. 11 (Trial Tr. IV at 26) (Page ID #732), not just the 9mm firearm identified in the charging document. Just as in *Stirone*, therefore, "it cannot be said with certainty that with a new basis for conviction added, [Swanigan] was convicted solely on the charge made in the indictment the grand jury returned." *Stirone*, 361 U.S. at 217. And if we cannot know whether the basis of the jury's conviction was the 9mm or some other firearm, the variance between indictment and proof "destroyed [Swanigan's] substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Id.*

But, the differences between this case and *Stirone* are also obvious. The facts alleged in Stirone's indictment differed significantly from the additional proof put on at trial. The indictment alleged that Stirone interfered with shipments of sand used to make concrete from another state into Pennsylvania. The additional proof was that his actions could amount to a violation if the jury found that the concrete in question "was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce." *Id.* at 214 (internal quotation marks omitted). The

evidence relating to current shipments of sand interstate was wholly unrelated to the evidence relating to future shipments of steel interstate. An individual who comes to court to defend against charges for his conduct in the sand industry and is instead forced to defend also against his acts in a wholly separate industry is understandably prejudiced by the variance. Here, however, the charged act and the proof all related to the same police raid, on the same date and time, and in the same house—Swanigan's house—where Swanigan was arrested. The differences in proof were minimal, and the evidence used to defend against such proof would functionally be the same.

Nor has the Supreme Court held that all variations between the indictment and the proof at trial are of the fatal *Stirone* variety, despite the sweeping language in that case, even when the indictment is specific and the proof is more broad. In *Berger v. United States*, 295 U.S. 78, 81 (1935), the Supreme Court held that there was no fatal variance when a defendant was charged and convicted of participating in one specific conspiracy but the proof at trial encompassed two conspiracies. Although there was no jury instruction in *Berger* to convict if the defendant was deemed to have participated in either—the second conspiracy was meant to target the co-defendants—the Supreme Court in *Berger* emphasized that "no variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial." *Id.* at 83 (quoting *Wash. & G. R. Co. v. Hickey*, 166 U.S. 521, 531 (1897)) (internal quotation marks omitted).[2]

---

[2]The lower courts have drawn a line between *Berger* and *Stirone*, calling a *Berger*-like discrepancy a non-fatal variance and a *Stirone*-like discrepancy a constructive amendment. *See Gaither v. United States*, 413 F.2d 1061, 1071-72 (D.C. Cir. 1969); *see also United States v. Beasley*,

Certainly, there are differences between this case and *Berger* as well. There was no jury instruction, as here, that the defendant could be convicted if found to participate in either conspiracy and not just the one charged. But would it be *unreasonable* for a state court to conclude that this case is closer to *Berger* than *Stirone*? No.[3] And Swanigan does not argue that his defense was prejudiced by the failure of the indictment to charge all possible weapons in violation of the law clearly established by *Berger*. The firearms were seized in the same house during the police raid in which Swanigan was arrested, and he does not challenge the Michigan Court of Appeals's finding that the evidence was sufficient to convict Swanigan of possessing any one of the two firearms.

The state-court decision may have been incorrect, but we cannot conclude that it was an unreasonable application of clearly established federal law as announced by the Supreme Court.

### IV. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court.

---

583 F.3d 384, 389-90 (6th Cir. 2009). The Supreme Court has yet to adopt these labels.

[3]Indeed, we ourselves have previously held that where the indictment charges the defendant with carrying one type of firearm, but the proof identifies four firearms in the house and the jury is told to convict if the "the defendant carried any firearm," the variance is not fatal. *United States v. Robison*, 904 F.2d 365, 368-69 (6th Cir.), *cert. denied*, 498 U.S. 946 (1990).