### STATE v. SOUTH CAROLINA RAILWAY COMPANY.

1. Under the act of 1852, authorizing a railroad bridge over the Congaree River, provided the bridge be at least 42 feet above the bed of the river, the railroad company pay the expenses of putting hinges on the smoke stacks of steam-boats, and transport certain fertilizers at a fixed rate, the company were bound to keep the bridge at the required height. When, therefore, the bridge was originally built so as to leave more than 42 feet, but by filling up of the bed of the stream, the height had become less, it was an obstruction to navigation not authorized by law.

2. Even if the original bridge was sufficient because built at the required height, still a subsequent bridge which when erected was not 42 feet above the bed of the river as it then existed, would not be authorized by this statute.

Before WITHERSPOON, J., Richland, June, 1887.

The opinion fully states the case.

*Mr. J. C. Haskell*, for appellant.

*Messrs. Nelson*, solicitor, and *A. T. Smythe*, contra.

February 1, 1888. The opinion of the court was delivered by

MR. JUSTICE McIVER. The defendant was convicted of a nuisance in obstructing the navigation of the Congaree River by

a bridge across that stream. It was conceded on the trial that the Congaree River is a navigable stream, and that the bridge in question presented an obstruction to the free navigation of the river; but the defence was, that such obstruction was authorized by the act of 1852 (12 *Stat.*, 177), whereby the South Carolina Railroad Company, to all of whose corporate rights, franchises, and privileges the defendant company had succeeded by purchase, had been permitted to erect such bridge. That was an act entitled "An act to authorize the South Carolina Railroad Company to construct a certain bridge over the Congaree River," and its first section, which is the only one applicable to this controversy, reads as follows:

"Whereas the public interest is concerned in the ready and safe passage over the Congaree River, as well as in the navigation of the same, and a secure passage over the said river by bridge interferes with the uninterrupted navigation thereof by steamboats with chimneys of great height, unless means be taken to reduce the height of such chimneys by hinges, to be used as occasion may require, therefore: Be it enacted * * * that it shall and may be lawful for the South Carolina Railroad Company to construct a bridge over the Congaree River where it is intersected by the railroad, although the said bridge be not of sufficient elevation to permit steamboats to pass without lowering their smoke-stacks: provided that the said bridge be at least forty-two feet above the bed of the river: and provided also, that the said company shall satisfy and pay all the expense which any steamboat may incur by reason of any alterations which may be rendered necessary by this act, and by the necessity of lowering the smoke-stack of such steamer by the use of hinges or by any other manual contrivance: provided also that the said railroad company shall transport guano and agricultural plaster of paris at a rate not exceeding twelve and a half cents per hundred pounds to Camden, Columbia, and Hamburg, and at the same rate to all intermediate stations."

The Circuit Judge instructed the jury that in order to enable the defendant company to avail itself of the privilege conferred by the act, the bridge must be kept at the height of at least forty-two feet above the bed of the river, and declined to charge the

jury, as requested, that if the bridge originally constructed was at the required height, and has ever since been kept at the same grade, or above it, the defendant could not be convicted even though, by reason of the raising of the bed of the stream by natural deposits or other natural causes, the distance between the bottom of the present bridge and the bed of the stream is less than forty-two feet. The jury having rendered a verdict of guilty, the defendant appeals on the following ground :

"Because his honor erred in ruling that the defendant was bound to maintain its bridge over the Congaree at a height of at· least forty-two (42) feet above the bed of the river, as long as it kept a bridge at the crossing of its line over the said river, whereas he should have ruled as requested, to wit: That if it built the bridge at least forty-two feet above the bed of the stream, and has ever since kept it at the same grade or above it, that then the defendant is not guilty, even if, by reason of deposits in the bed of the stream, there is less than forty-two feet between the said bed and the bottom of the bridge."

So that the question raised by this appeal turns upon the proper construction of the act of 1852, above set out. It seems to us that the manifest purpose of the act was to confer upon the company the right to obstruct, or at least partially obstruct, the navigation of the river upon certain specified conditions, and that without a compliance with these conditions the right conferred could not be claimed. These conditions were three in number: 1st. That the bridge should be of a certain height. 2nd. That the company should pay such expenses as any steamboat might find it necessary to incur in order to enable it to pass under said bridge. 3rd. That the company should transport certain fertilizers at the rates specified. The question, then, is whether these conditions were continuing, or whether they were confined to the point of time when the bridge was constructed. ·There can be no doubt that the privilege conferred upon the company was a continuing one, and that the purpose was to confer upon the company the right not only to construct the bridge, but also to keep and maintain it, and there is as little doubt that the second and third conditions were also continuing, and were not intended to be confined to the time when the bridge was constructed; for it

would be absurd to suppose that the legislature intended to confine the obligation of the company to pay for the necessary alterations in steamboats to the time when the bridge was constructed, and still more absurd to suppose that the intention was to require the company to transport the fertilizers named, at the rates specified, *only* at the time when the bridge was constructed. If, then, the privilege granted, and two of the conditions upon which such privilege was conferred, were clearly continuing, the natural inference would be that the other condition was of the same character.

But again, the purpose of the act, as expressed in the preamble, was to recognize and protect the rights of the public in the navigation of the river, as well as to confer upon the company the privilege in question, and the tenor of the act shows very clearly that the legislature deemed it necessary to effect this purpose that the bridge should be at least forty-two feet above the bed of the river, and if at any time or from any cause the bridge should not be of the height thus declared to be necessary for the preservation of the rights of the public, the privilege could no longer be claimed, as otherwise one of the declared purposes of the act would be defeated. This view, it seems to us, is supported by the language of the act; for the act, after conferring the privilege to construct the bridge, proceeds to declare in effect that such privilege is granted upon certain conditions, the first of which is, "that the said bridge *be* (not, be constructed) at least forty-two feet above the bed of the river." Whenever, therefore, the bridge, constituting as it does at least a partial obstruction to navigation, is found to *be* below the required height, then the condition upon which such structure was authorized no longer exists, and hence the structure becomes just as unlawful as if the privilege to erect it had never been granted, inasmuch as one of the express conditions of the grant is absent. Without the act the bridge would be an unlawful structure, and the act only permits its erection provided it *be* of the prescribed height, and whenever it is found to be not of the prescribed height, it can no longer be regarded as a lawful structure.

It is argued, however, that such a construction of the act would make the compliance with the condition prescribed onerous and

expensive to the company if, as is claimed to be the fact, the bed of the river has been slowly but constantly rising, so as to render it necessary to raise the bridge from time to time, in order that the required height above the bed of the river should be maintained. The answer to this is, that if a party obtains from the legislature a privilege, in derogation of the rights of the public, upon certain conditions which afterwards prove to be so onerous or expensive as to make the privilege granted comparatively useless, that is a matter to be considered by the party asking for the privilege, and cannot affect the rights of the public. It certainly cannot have the effect of dispensing with the necessity for compliance with one of the conditions upon which the privilege was conferred. The utmost effect that such a consideration could have, would be to furnish an argument in favor of the view contended for by appellant as to the proper construction of the act, viz., that if the bridge, when it was originally constructed, was of the prescribed height, then the condition was fully complied with, even though it should afterwards appear that, by reason of the rise in the bed of the stream, such height had not been maintained.

But, as we have indicated above, it is quite certain that when the act was passed conferring the privilege, the legislature deemed it necessary for the preservation of the rights of those who might desire to navigate the river, that the bridge should be of a certain height above the bed of the stream, and that the privilege would not have been granted except upon compliance with that condition. If, as the language of the act clearly shows, the legislature deemed it necessary when the act was passed, for the preservation of the rights of the public, that the bridge should be of a certain height above the bed of the river, there is nothing in the act which would indicate that the legislature thought such necessity was confined to the time when the bridge was originally erected; but, on the contrary, there was every reason to believe that the contrary was intended, and that the same necessity would continue as long as such structure was allowed to remain.

Hence, when the company applied to the legislature for permission to erect what would otherwise be an unlawful structure, permission was given upon certain conditions, one of which was

"that the said bridge be at least forty-two feet above the bed of the river." It will be observed that the language of the condition is—*not*, that the bridge be *erected* at the height prescribed—but that it *be* of the required height. It is not, above the *present* bed of the river, but above the bed of the river, which, as experience shows, is liable to shift or change from the effects of floods or from natural or artificial obstructions, and which, therefore, was not a fixed point from which the measurement was to be made; and when it is remembered that the manifest purpose of this condition was to leave such a space between the bridge and the bed of the river as was deemed necessary for the purposes of navigation, the conclusion seems irresistible that the legislature intended, by the language used, to permit a structure which would otherwise be unlawful as long as the required height was preserved and no longer.

There is, however, another view of this case equally fatal to the defence set up, even under the construction of the act contended for by appellant. It is stated in the "Case," as prepared for argument here, "that the first bridge had been constructed over the river in 1852. This had been washed away by a freshet. That a lattice bridge was then built in 1854, but was taken down and replaced in 1857 by a third bridge. This was burnt in 1865, and replaced by a temporary structure. The present bridge was built in 1867." Now, even conceding that, under a proper construction of the act, the proviso in reference to the height of the bridge was not continuing, but that if the bridge at the time of its erection was of the prescribed height above the bed of the river, the condition would be fully complied with, even though, by reason of a change in the bed of the stream, it should not continue to be of such height above the bed of the river, yet to make out the defence it would be necessary to show that the present bridge, when it was erected in 1867, was forty-two feet above the bed of the river, and this was not done. The fact that the present bridge is at the same grade, or above it, as the first bridge erected, cannot affect the question. The indictment is for the obstruction caused by the present bridge, and the question is, whether *it* is a lawful structure; and even under the construction of the act contended for by appellant it cannot be so regarded, unless

it was forty-two feet above the bed of the river *at the time of its construction*—not above what was the bed of the river at the time the act was passed.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.