## THE SANTA RITA.

(Circuit Court of Appeals, Ninth Circuit. February 28, 1910.)

No. 1,771.

1. ADMIRALTY (§ 118*)—REVIEW ON APPEAL—FINDINGS OF FACT.

Where the testimony of the witnesses in a suit in admiralty was largely taken by deposition, there is not the same presumption in favor of a finding of fact by the trial court as when based on oral testimony of witnesses appearing before it, and it will be more readily reviewed by an appellate court.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 770–772; Dec. Dig. § 118.*]

2. NEGLIGENCE (§ 62*)—PROXIMATE CAUSE OF INJURY—INTERVENING EFFICIENT CAUSE.

One of the most valuable tests to apply to determine whether a negligent act was the proximate or remote cause of an injury is to determine whether a responsible human agency has intervened, sufficient of itself to stand as the cause.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76–79; Dec. Dig. § 62.*]

3. SHIPPING (§ 81*)—LIABILITY OF VESSEL FOR INJURY TO ANOTHER—PROXIMATE CAUSE OF INJURY.

An oil burning steamer, lying beside Long Wharf at Oakland, in San Francisco Bay, discharged a considerable quantity of inflammable fuel oil from her hold into the waters of the bay, which was carried by the wind and tide under the wharf, where, mixing with floating débris, it formed a mat. The wharf was 90 feet wide, supported on piles, and there were vessels lying on the opposite side. The floor of the wharf was in places soaked with oil which had escaped from oil burning engines used thereon. By some accidental means the inflammable mat formed on the water was set on fire, burning a portion of the wharf, and also injuring libelant's vessel lying on the other side and around which the oil floated. *Held*, that the negligent act of the steamer in discharging the oil into the bay was the proximate cause of the injury, which, with knowledge of the inflammable character of the oil, the adjacent wharf on which men and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

engines were working. the surrounding vessels. and the prevailing wind and tide, should reasonably have been anticipated as a probable consequence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 344; Dec. Dig. § 81.*]

Appeal from the District Court of the United States for the Northern District of California.

Suit in admiralty by the Société Nouvelle d'Armement, as owner of the bark Boieldieu, against the steamer Santa Rita; the United Steamship Company, claimant. Decree for respondent (173 Fed. 413), and libelant appeals. Reversed.

William Denman, for appellant.

Charles Page, Edward J. McCutchen, and Samuel Knight, for appellee.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge. The Société Nouvelle d'Armement, a corporation of France, brought this libel against the American steamer Santa Rita, to recover damages for injuries inflicted upon the Boieldieu, a three-masted steel bark belonging to the libelant. The lower court found that the alleged negligent act of the defendant was not a proximate, but remote, cause of the injury. The libelant sued out this appeal from a judgment in favor of defendant.

The material uncontroverted facts are substantially as follows: The Santa Rita, an oil burning steam vessel, 450 feet long, was moored to the north side of a wharf at Oakland, Cal. The British ship Whitlieburn and the libelant's bark Boieldieu were moored on the south side of the same wharf and directly opposite the Santa Rita. The wharf was 90 feet wide, built on piles driven into the bottom of the harbor. Between 4 and 5 o'clock on the afternoon of March 11, 1907, a fire broke out, partially consuming the wharf and greatly injuring the Boieldieu.

The libelant alleges that this fire was caused by the negligence of the Santa Rita in pumping into the bay or allowing to drip from her decks therein large quantities of volatile fuel oil, which collected under the wharf in the alleyway formed by the vessels and the wharf, and that, as the tide started to come in, this mass of oil, held and matted together by particles of inflammable rubbish and débris, moved partially out from under the wharf and surrounded the Boieldieu. The libelant further contends that, while the Boieldieu was thus surrounded by this highly combustible oil mat, a spark from an engine on the wharf, or a live coal from the fuel box of the donkey engine, or a burning cigar, was thrown from the wharf into this oily mass, igniting it and causing the conflagration which damaged the wharf and the Boieldieu.

The court found, among other things, that oil of a highly combustible nature was discharged from the Santa Rita and collected in the water under the wharf and around the Boieldieu. There is ample

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

evidence to support this conclusion. Much of the evidence offered by the defendant relating to this finding is that of men who testify that they did not pump any oil overboard or see any thus pumped.

On the other hand, the libelant supports its contention by the testimony of those who saw the oil thrown into the bay, and, in fact, were actors in putting it there. The Lakme. Tyee. Queen Elizabeth, 118 Fed. 972, 55 C. C. A. 466. The decision of this question of fact depends upon the veracity of the libelant's witnesses, and who is better fitted to judge of their credibility than the court before whom they appeared? The surrounding facts and circumstances also point strongly to the probability that the oil which burned on the water around the Boieldieu came from the Santa Rita. We believe the finding of the lower court was correct.

The court further found that this mat of oil was ignited by the heat or flame from the burning wharf, taking the view that in some unexplained manner the wharf caught fire, and that the fire was communicated to the oil which lay on the water in close proximity thereto, and that the injury to the Boieldieu was caused jointly by the burning of the wharf and by the burning of the oily mass on the water. The finding that the fire originated on the wharf is vigorously assailed. The libelant contends that the oil ignited first, and that the flame spread from the oil to the wharf. We regard the defendant's contention that no oil whatever burned on the water as plainly against the evidence and without merit. There is no reasonable doubt that the wharf burned, and some oil on the water burned; and the further question now arises: Where did the fire originate? On the wharf, or in the oil?

There is no evidence tending to show that any particular act started the conflagration; nor do the circumstances of themselves point to any probability by which the court may safely be guided to one view or the other. There were several oil burning locomotives, a donkey engine, and 20 or 25 men on the wharf at the time of the fire. The wharf itself was more or less oil soaked in spots, and there were several car loads of hay or other inflammable material thereon. The men were smoking. It is not at all improbable that one of them carelessly let drop a burning match near the hay, thus starting the fire. Or, an engine may have dropped some fire or sparks on the oil soaked planks of the wharf, and so caused the fire. On the other hand, the presence of active engines and smoking men might lead equally as well to the conclusion that the fire started in the oil on the water. It is well established that this matted mass of fresh oil was very inflammable, even though floating. A burning cigar stub, or a live spark thrown from an engine, falling on a chip or other more or less solid material in the oil, would furnish a rational explanation of the origin of the fire.

The natural probabilities in favor of the different theories being equal, it is necessary to weigh and examine carefully the testimony of the eyewitnesses, in order to arrive at as just and right a conclusion as is possible under the circumstances. Fortunately, there is little real conflict in the testimony of those who saw the fire as to where it

started. One of defendant's witnesses says positively that it started on the wharf, and the others say that it looked to them as if it started there. But those who were in a position to see where it started—who were south of the line of cars—testify directly and unequivocally that the fire started on the water, and that they saw it there before any was visible on the wharf proper. Whether on the water or on the wharf, it is undeniable that it started either to the south of the cars or in the cars themselves. The witnesses of libelant who testified on the point were in such a position that a fire in either of the places above named would have been easily discernable by them, while the defendant's witnesses were so situated that they could not have seen a fire on the water near the Boieldieu unless the flames mounted very high, and even then they were so far off that they might easily have been mistaken about the exact position of the conflagration. After a careful consideration of all the testimony, we are of opinion that the finding of the lower court, to the effect that the fire originated on the wharf, was clearly against the weight of the evidence and cannot stand.

In our examination of the evidence, which has led us to the conclusion that the learned judge of the lower court erred in his finding upon this point, we observe that libelant's principal witnesses, who gave direct evidence thereon, testified by depositions. Upon this matter, therefore, the trial judge had not the advantage of seeing and hearing the witnesses. His position, to arrive at a true result, was scarcely better than ours. Hence the rule that, when oral testimony is evidently the basis of a finding, or the written testimony relates to matters as to which the trial court is better able to reach a satisfactory conclusion than the appellate court, the finding will be adhered to, does not apply with the same force.

The court, after finding the facts as hereinbefore recited, made the further finding that the negligence of the Santa Rita in discharging oil into the bay could not be regarded as the efficient or proximate cause of the injury to the Boieldieu. The court said:

"The burning of the wharf was entirely disconnected, and unrelated to the original act of the Santa Rita in discharging the oil, and was not caused by any person connected with that vessel, and whose actions were subject to her control. Unless, therefore, the burning of the wharf and the consequent ignition of the oil were matters which ought to have been reasonably anticipated as probable—that is, more likely to occur than otherwise—the burning of the wharf must be found to be the efficient cause of the damage to the Boieldieu. Was the burning of the wharf, and the ignition of the oil, something more likely to occur than not—something that a person of ordinary prudence would have thought to be probable? The result has shown that such a fire—the ignition of oil thereby—and the consequent damage to the Boieldieu, were matters which might occur—events which any person of ordinary judgment would have known to be possible. But the question is not whether a person of ordinary prudence would have known that such results were possible, but whether they would have been regarded by him as probable—something likely to occur, and therefore to be guarded against—by not discharging fuel oil into the bay.

"It seems to me this question must receive a negative answer. A man of extreme caution might have anticipated the result; but one of ordinary prudence and foresight would not have thought, in view of all the surrounding circumstances, that fuel oil, if discharged into the waters of the bay, with its

tides and winds, would probably be set on fire, by the accidental or negligent burning of the wharf, or by live coals thrown into the bay and coming in contact with the oil."

We cannot give our assent to this view of the case. The respondent ship, being an oil burning one, was charged with knowledge of the inflammable quality of fresh oil, even on water and was also charged with knowledge of the probable effects of ordinary winds and tides in carrying the oil to where it might do great injury. The respondent cannot, therefore, be heard to say that she did not know fresh oil on water was inflammable, or that she had no reason to believe that the oil which she put into the harbor would be driven by the winds and tide under the dock and in among the shipping. It ought to have been known that the presence of a large quantity of fresh oil of a very combustible nature was a menace and danger while lying in an exposed position around a busy wharf. It ought reasonably to have been anticipated by those in charge of the Santa Rita that such a mass of oil floating under the wharf and around the shipping was likely to be ignited in some manner through the numerous and patent sources of fire which were near by. What would be more natural than for a man about the shipping to throw his lighted cigar stub into the bay, or for an engineer on the wharf to dump his live coals into the water? Certainly, one not having any reason to believe that the water was covered with an inflammable sheet could not be held to be negligent in thus throwing his burning coals or lighted cigar into the harbor. Indeed, a careful man, anxious to avoid all risks of fire, would select the water as the natural and seemingly proper place to put them. Surely, the defendant was charged with notice that men rightfully do these things, and that the doing of them where large masses of inflammable oil are floating about would probably produce a conflagration.

There is no infallible rule by which one can distinguish between a proximate and a remote cause.

Justice Moody, for the Supreme Court, has recently said:

"Few questions have more frequently come before the courts than that whether a particular mischief was the result of a particular default. It would not be useful to examine the numerous decisions in which this question has received consideration, for no case exactly resembles another, and slight differences of fact may be of great importance. The rules of law are reasonably well settled, however difficult they may be of application to the varied affairs of life." Atchison, etc., Ry. Co. v. Calhoun, 213 U. S. 1, 29 Sup. Ct. 321, 53 L. Ed. 671.

In Milwaukee Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, the court said:

"Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application, but it is generally held that, in order to warrant a finding that negligence, or an act not amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury is the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attendant circumstances."

Tried by the above rule, it appears to us that the negligent act of the Santa Rita in pouring oil into the bay was the proximate cause of

the injury to the Boieldieu. The injury flowed directly from the negligent act. The result of the act is not incompatible with what one would expect. The question is not whether such an act would produce a conflagration in the majority of cases, but whether it has a decided and natural tendency to produce such a result.

One of the most valuable tests to apply to determine whether a negligent act is the proximate or remote cause of an injury is to determine whether a responsible human agency has intervened between the fact accomplished and its alleged cause. "If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered too remote." Insurance Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65; Washington & Georgetown R. v. Hickey, 166 U. S. 521, 17 Sup. Ct. 661, 41 L. Ed. 1101.

In this case another force or power had not intervened. The throwing of the lighted cigar, or burning coal, into the bay cannot be said to be another force, or to break the causal chain. These acts were innocent, yet probable, and as natural as were the acts of the shopkeepers in throwing around the squib, in the famous "squib case" (Scott v. Shepherd, 2 W. Bl. 892), although we recognize that the causal connection that existed in the squib case between the original act and the intermediate acts is not found in the present instance.

We are of opinion that the injury to the Boieldieu was the natural and probable consequence of the negligent act of the Santa Rita, and ought to have been anticipated in the light of the surrounding circumstances. The circumstances which must be considered are the highly combustible nature of the oil, the condition of the tide and wind, the proximity of the wharf and shipping, the inflammable condition of the oil soaked wharf, and the many chances of accidental ignition to which the oil was exposed. Without doubt, the natural and probable consequence of covering water with oil might not, under different circumstances, have had a natural tendency to produce any injury. If the oil had been dumped into the middle of the bay, far from any ship or wharf; if the wind and tide had been different; if the wharf had been fire proof; if the oil had been less inflammable; if the chances of fires had been much less—we might have reached a different conclusion. But, considering all the facts and circumstances, we must conclude that the injury done by the floating oil ought to have been foreseen, and that, therefore, the placing of it on the water was the proximate cause of the injury inflicted by its ignition. Milwaukee R. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395; Washington & Georgetown Ry. Co. v. Hickey, 166 U. S. 521, 17 Sup. Ct. 661, 41 L. Ed. 1101; McGill v. Michigan S. S. Co., 144 Fed. 788, 75 C. C. A. 518.

The libelant placed great reliance on section 374½ of the Penal Code of California, as affecting the question of proximate cause and the burden of proof in relation thereto. That is a statute which makes it a misdemeanor for any one to discharge petroleum or certain other substances into the waters of a navigable bay or river of the state. In arriving at our conclusion, we have not taken this statute into consideration, because, under the facts, we believe liability exists irrespective of the statute.

·The decree of the District Court, dismissing the libel with complainant's costs, is reversed.

It is further ordered that the District Court enter decree in favor of libelant in usual and proper form.