### OLYMPIAN DREDGING CO. v. SOUTHERN PAC. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1921. Rehearing Denied March 9, 1921.)

No. 3527.

1. **Navigable waters** ⊜—20 (6) — **Railroad company removing old bridge bound not to leave obstructions.**

A railroad company authorized to build a new bridge over a navigable river and to remove the old one is bound to see that no part of the old bridge is left which is an obstruction to navigation or which is likely to become an obstruction under conditions reasonably to be anticipated, and

---

⊜—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it is not relieved from such obligation by compliance with specific conditions imposed by the War Department in granting authority to rebuild.

**2. Navigable waters ☞20(5)—Railroad company liable for injury to vessel by submerged piles of old bridge.**

A railroad company and its lessee, which under the lease assumed the building of a new bridge on the lessor's road over the Sacramento river and the removal of an old one, both *held* liable for injury to a vessel caused by parts of piles of the old bridge left submerged when it was destroyed, and which, because of a jetty built by the government prior to such removal, resulting in changing the channel of the river, became dangerous obstructions to navigation.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank H. Rudkin, Judge.

Suit in admiralty by the Olympian Dredging Company against the Southern Pacific Company and the California Pacific Railroad Company. Decree for respondents, and libelant appeals. Reversed and remanded, with directions.

Libel in personam against the Southern Pacific Company and California Pacific Railroad Company filed by Olympian Dredging Company to recover damages arising out of a collision of the dredger Thor with certain submerged piles in the Sacramento river. The allegations of the libel are that the piles were negligently left in the river by the respondents at the time of the removal of a certain railroad bridge.

The District Court dismissed the libel on the ground that there was no liability, and from a decree entered in favor of the respondents appeal was taken. In brief the evidence showed these facts:

In 1858 a wagon road bridge was built across the Sacramento river connecting the city of Sacramento with the county of Yolo in California. In 1869 the California Pacific Railroad Company, respondent, obtained a franchise to run its railroad across the 1858 bridge. In 1878 the California Pacific Railroad Company built another bridge above the 1858 bridge, and the 1858 bridge was destroyed. Later, in 1896, the 1878 bridge was destroyed. In 1895 the California Pacific Railroad Company had permission from the War Department of the United States to build another bridge across the Sacramento river. In 1909 another bridge was built above the 1895 bridge. It will thus be observed that the 1858 and 1878 bridges were located above the present, or 1909, bridge, while the 1895 bridge was below the present bridge.

About midnight of July 13, 1918, the dredger Thor, 120 feet long, 58 feet wide, drawing between 5 and 6 feet of water, was moving down the Sacramento river drifting with the current with the bow of the dredge upstream, and when about to enter the draw of the present or 1909 bridge she struck upon one or more partially destroyed piles, and her hull was pierced and she sank, in about the center of the east draw channel of the 1909 bridge. The divers said that there was a bulge about 4 feet square in the upper floor inside of the hull underneath the hatch; that there was also a hole with a pile sticking up on the aft end of the port side on the Yolo county side; that there was also a hole in the rake where a pile from a cluster went through; that the tops of these piles were ragged as though they had been blasted off, not sawed off square; that some stuck up 4 or 5 feet higher than others; that they sawed off several feet of these piles in order to free the dredge. The depth of the water in the draw at the time of the collision was not less than 7 feet, and according to respondent's diagram put in evidence

the tallest pile of a certain cluster in the river was 4 feet 6 inches below zero on what is called the K street Sacramento gauge. But it is plain that there was not sufficient clearance for the dredge when the accident occurred.

When the War Department gave a permit to the California Pacific Railroad Company to build the 1895 bridge, one of the conditions imposed was that the railroad company remove the piles constituting the structure of the 1878 bridge "to a depth of 7 feet below the level of the lowest low water, being a reading of 7.5 feet on the Sacramento, Cal., K street gauge." Accordingly some of the piles of the 1878 bridge were blown off by dynamite placed in the river bed against the piles, and some appeared to have been cut off several feet below the bed of the stream as it existed at that time. The bed of the river was lowered in 1893 by the construction of a jetty by the government on the Yolo side of the river just above the point where the accident occurred, and some dredging was done by the government at a point below the place of the accident. Undoubtedly there has been a "scouring out" of the river for many years, and there was a material change in the flow at the point of the 1878 bridge, so that the extreme low-water mark, as fixed by the Secretary of War in the original permit, was in 1918 approximately 7 feet lower, although the depth of water was really not less. Obviously under such conditions piling which had been blown or cut off in 1895 below the mark prescribed by the War Department extended much higher above the low-water mark when the Thor was damaged.

James S. Spilman and Haven, Athearn, Hall & Chandler, all of San Francisco, Cal., for appellant.

Geo. K. Ford and Elliott Johnson, both of San Francisco, Cal., for appellees.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] When the railroad company built the new bridge there was an obligation upon it to remove any piling that had been used in support of the 1878 bridge, and which then constituted an obstruction to navigation, or which, considering the general character of the Sacramento river and the reasonable probability that in the future its bed in that vicinity would be materially shifted, would become an obstruction. We believe such a standard is correct generally, and is to be applied to the facts of the present case, where the railroad company knew that the channel of the river was a shifting one, and with such knowledge left piles standing in the bed of the river at places where it was reasonably probable the channel would shift. The piles could have been removed entirely, but for reasons of its own not material at all to be inquired into the company chose to cut the piles off and to leave them submerged where under changed conditions which ought to have been anticipated and guarded against they became a positive menace to navigation. It is, of course, highly important that there be no unnecessary obstruction to the navigation of rivers; hence it is a salutary rule that one who lawfully constructs a bridge across a river for railroad or business purposes must not only not obstruct free navigation at the time of construction, but must exercise diligence in guarding against dangers fairly to be anticipated. Among cases bearing upon the question we cite Vessel Owners' Towing Co. v. Wilson, 63 Fed. 626, 11 C. C. A. 366; N. P. R. Co. v. United States, 104 Fed. 691, 44 C. C. A. 135,

59 L. R. A. 80; State v. So. Carolina R. Co., 28 S. C. 23, 4 S. E. 796. Philadelphia, W. & P. R. Co. v. Philadelphia & Havre de Grace St. Co., 23 How. (64 U. S.) 209, 16 L. Ed. 433, is cited by both sides. There the piles in the channel were cut off under the surface of the water and became a hidden and dangerous nuisance as the result of negligence in cutting off the piles, "not at the bottom of the river, but a few feet under the surface of the water." We cannot draw the implication that the Supreme Court meant that, if the piles had been cut off at the bottom of the river, negligence could not be inferred. On the contrary, the court said it was the duty of the railroad company to take care that all the obstructions to the navigation which had been placed in the channel by their orders and for the purpose of their intended erection should be removed. Thus it seems to us was a general obligation recognized.

[2] Respondents say that the act of the railroad company in leaving the piles in the river bed was not the proximate cause of the accident, but that the construction of the jetty above the bridge site and the dredging operations below it were the cause. It may be granted that those two latter things had the effect of changing the channel of the river, and that as a result the level of the river was reduced. But when the 1878 bridge was destroyed in 1895 the railroad company knew that the channel was shifting, and knew that in 1893 the government had constructed a wing dam directly by the 1878 bridge for the very purpose of throwing the current of the river and the channel from the Yolo to the Sacramento side. For years there was knowledge that the shifting current would in all probability change the channel over to where the piles were submerged in the bed, and in constructing the later bridges the draw span was moved farther over toward the Sacramento side.

Under the circumstances and with the knowledge possessed, we think the railroad company cannot avoid liability upon the ground of an intervening cause. It was the failure to remove the piles left in the shifting stream that caused the damage, and the shifting of the channel, so far as it became a contributing force, ought reasonably to have been considered. The Santa Rita, 176 Fed. 890, 100 C. C. A. 360, 30 L. R. A. (N. S.) 1212; Vessel Owners' Towing Co. v. Wilson, 63 Fed. 626, 11 C. C. A. 366. Nor is the question of liability affected by the fact that the conditions imposed by the War Department were complied with; for plainly the restrictions so imposed did not define the measure of liability of the railroad company to third persons rightfully navigating the river. Maxon et al. v. C. & N. W. R. R. Co. (D. C.) 122 Fed. 555. It is said that the liability of the Southern Pacific Company has not been established. The evidence is that the 1878 bridge was destroyed by the maintenance forces of the Southern Pacific Company and that the permit for the construction of the 1895 bridge had been issued by the government to the California Pacific Railroad Company; it being the custom for permits for bridges to issue to the corporations, not necessarily the leasing and operating company. It appeared that the Southern Pacific Company leased the California Pacific Railroad Company under an agreement dated No-

vember 1, 1886, and that the provisions of the lease made it the duty of the Southern Pacific Company to keep and maintain the property leased in good order, condition, and repair, and operate, maintain, and add to and better the same at its own expense. If it be assumed that there was no obligation under the lease which required the Southern Pacific Company perpetually to care for property abandoned by the California Pacific Company, it is none the less true that the Southern Pacific built the 1895 bridge and destroyed the 1878 bridge, and in a practical way interpreted the provisions of the lease as requiring it not only to build the bridge that it built, but to do those things which it was under obligation to do in the way of keeping the channel free from obstructions which had been·left there at the time of the construction of the 1895 bridge.

The decree dismissing the libel is reversed, and the cause is remanded, with directions to determine the amount of the appellant's damages upon the evidence in the case, and enter a decree therefor.