SCRIPPS v. MORAN. *

(Circuit Court of Appeals, Ninth Circuit. December 20, 1926.)

No. 4791.

1. Shipping ⊗⟿58(2)—In suit to recover charter hire and for damage to vessel, evidence held to support findings for owner.

In suit against charterer of vessel returned before expiration of term, for charter money and damages for injuries to vessel, in which charterer filed cross-libel for unseaworthiness, evidence *held* to support findings for owner.

2. Admiralty ⊗⟿118—Findings of commissioner, approved by trial court will not be disturbed, except for palpable mistake.

Findings of a master or commissioner on matters of fact, on conflicting evidence, when approved by the District Court, will not be disturbed by an appellate court, unless in cases of palpable mistake.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Suit in admiralty by Robert Moran against Robert P. Scripps, as executor of the will of E. W. Scripps, deceased. Decree for libelant, and respondent appeals. Affirmed.

On March 17, 1919, at Seattle, Wash., the appellee, as owner, entered into a charter party with E. W. Scripps, as charterer, whereby the yacht Sanwan, which the appellee had built for his own private use, together with her auxiliary power, tackle, furniture, and equipment, including motor tender and tender, were leased to said charterer at a monthly rental of $2,500 for a period of six months, with the privilege of an additional term of six months, and with the option during the three months following April 20, 1919, to purchase said yacht for the sum of $80,000. The appellee was paid $2,500, and on April 19, 1919, was paid the further sum of $5,600. Thereupon the yacht was delivered to the charterer, and he approved a receipt,

*Rehearing denied January 31, 1927.

signed by the master whom he had employed, acknowledging the delivery of the yacht "complete in accordance with the terms of the charter party." On April 24 the yacht proceeded from Seattle to San Diego, where she arrived on May 2, 1919. There Smithton, the secretary and manager of the charterer, went aboard, and with the master and chief engineer examined the yacht and overhauled her tackle and equipment. From San Diego the yacht made two short trips at sea.

On June 13 the charterer telegraphed to the appellee as follows: "Scripps has ordered Sanwan returned to you soon as possible. He finds the boat unsatisfactory and not suited to his use and is surrendering the boat finally." The following day the yacht started for Seattle. On June 17, 1919, she went into the port of San Luis Obispo to escape heavy seas and wind, and was compelled to remain there by the extreme severity of the weather until June 22. Proceeding thence, she encountered such heavy seas and wind off the Mendocino coast that she turned back to San Francisco, where she arrived on June 28. There she remained until July 9, when, proceeding northward, she again encountered heavy seas and wind. She arrived at Seattle harbor July 24. She remained anchored there until September 15, with a caretaker in charge, all the crew having been discharged. While so lying at anchor her hull was badly chafed and gouged through riding a buoy to which she was made fast. She was finally accepted by the appellee on November 28, 1919, "without prejudice to his claims for charter money and damages."

On January 7, 1920, the appellee filed his libel against the charterer to recover $7,500, the balance due for hire of the vessel, $135.75 on account of a number of items of equipment claimed to be missing, $29,000 damages for necessary repairs to restore the vessel to the condition in which she was at the time of her delivery to the charterer, and $2,416.50 for demurrage while the vessel was being restored to her former condition.

In his answer to the libel the charterer denied that there was misuse, neglect, or improper handling of the yacht, or that she was damaged, or that any of her equipment was missing, or that demurrage was due or owing, and he set forth an affirmative defense, alleging defects and imperfections in the construction of the yacht, and further alleging that she was not a seaworthy vessel. He claimed that he was entitled to reimbursement for damages in the amount of $29,027.89, for the recovery of which he filed also a cross-bill.

The cause was referred to the United States commissioner as special master, and he was empowered to take testimony and on the evidence to make findings. He accordingly made finding of fact upon his review of the conflicting testimony, and he found that the preponderance of the evidence showed that prior to making the alterations in the yacht's tackle and equipment, which were made at San Diego, the yacht had made the trip from Seattle to San Diego in an entirely satisfactory manner, but that, after the alterations, difficulty was experienced in raising and lowering the anchor; that, on arrival at San Francisco, Capt. Worth, the master of the yacht, called upon the San Francisco Board of Underwriters for the purpose of ascertaining the storm damage, if any, to the vessel on her voyage from San Diego, whereupon a survey and inspection of the yacht was made, and Capt. Brown, of the Board of Marine Underwriters, found the vessel seaworthy, and, with the exception of the rigging being slack, not damaged by the storm. He stressed the fact that at that time no question was made of the seaworthiness of the vessel by any one, and that no such contention was made when the charterer wired to the appellee that the yacht would be ordered returned to him as soon as possible. He found that while anchored at Seattle no proper precautions were taken to prevent the yacht from riding the buoy to which she was fastened, the result being that her hull was badly chafed and gouged. He was impressed with the credibility of the witnesses called by the appellee to support his contention that the yacht was seaworthy, who, he said, were men of the highest character and intelligence in matters pertaining to the vessel and maritime matters in general, and he was unable to agree with counsel for the charterer that these men testified falsely, or that they were induced to color their testimony through friendship for the appellee.

In brief, he found from all the evidence that the Sanwan was a seaworthy vessel, and that the charterer was not justified in his breach of the charter party; that the appellee had duly performed his contract, that the charterer had failed to perform his part of the agreement, and that the appellee was entitled to recover $7,500, the balance due for hire of the vessel, $135.75 for missing equipment, and for damages and costs of repair, the sum total being $35,232.75, together with interest on $7,500 at 7 per cent. from July 21, 1919, and interest on $135 from November 2, 1919. On exceptions to the findings the trial court affirmed in the main the conclusions of the special master, but reduced to $1,000 the damages to the hull, which the special master had found to be $2,685.

Curtis Hillyer, J. C. Harper, and Walter E. Hardenburg, all of San Diego, Cal., for appellant.

Battle, Hulbert, Gates & Helsell and Robert A. Hulbert, all of Seattle, Wash., and Lawler & Degnan and Oscar Lawler, all of Los Angeles, Cal., for appellee.

Before GILBERT and RUDKIN, Circuit Judges, and NETERER, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] We have not the advantage possessed by the special master of seeing the witnesses and observing their demeanor, and thus estimating their credibility; but a careful consideration of the testimony leads us to the conclusion that the master properly weighed the evidence and correctly found the facts. There was evidence to sustain all of his findings. The appellee was a shipbuilder, with many years of experience. He had built the yacht for his own use. Capt. Tuttle, senior captain of the United States Guard Service, with 54 years of experience at sea, testified that the Sanwan was the strongest wooden vessel he had ever seen. By agreement between the parties, the charterer's master and crew participated in the overhauling of the yacht before her delivery, and thereafter the master receipted for the vessel as in good order. There was testimony that she was in every respect seaworthy. It is significant that the charterer, when he gave the appellee notice of his intention to surrender the vessel, made no claim that she was unseaworthy, but stated only that she was unsatisfactory and not suited to his use. There was evidence tending to show that the employés of the charterer were unskilled or incompetent, and that the trouble they experienced in operating the yacht was due to their inefficiency. There was notable failure of the charterer to produce the testimony of members of his crew as to certain of the issues, and there was failure to account for its absence.

[2] Nor do we find error in the method adopted by the special master to ascertain the damages, or that he erroneously determined the compensation for the use of the vessel or for the time during which she was laid up for repairs. The case is one for the application of the well-settled rule that the findings of a master or commissioner on

matters of fact on conflicting evidence, when approved by the District Court, will not be disturbed by an appellate court, unless in cases of palpable mistake. Kimberly v. Arms, 129 U. S. 512, 524, 9 S. Ct. 355, 32 L. Ed. 764; Warren v. Keep, 155 U. S. 265, 15 S. Ct. 83, 39 L. Ed. 144; Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289; The Providence (C. C. A.) 98 F. 133; Dunckley Co. v. Central California Canneries (C. C. A.) 7 F. (2d) 972.

As against this view the appellant cites decisions of this court, The Joseph B. Thomas (C. C. A.) 86 F. 658, 46 L. R. A. 58, and the Santa Rita (C. C. A.) 176 F. 890, 30 L. R. A. (N. S.) 1210; but those were cases in which there was no finding of fact by a master or a commissioner, and in which the trial court made findings upon the evidence, without the advantage of hearing and confronting the witnesses.

The judgment is affirmed.